IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DELORIS PHILLIPS, | ) | |
|     Plaintiff, | ) | |
| vs. | ) | No. 3:10-CV-1197-G-BH |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
|     Defendant. | ) | Referred for Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant's Rule 12(b)(6) Motion to Dismiss* ("Mot."), filed August 9, 2010, (doc. 67). Based on the relevant filings[1] and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On June 16, 2010, Plaintiff filed this action against her current employer, United Parcel Service ("UPS"), under the Fourteenth Amendment; 42 U.S.C. §§ 1981 and 1988; 28 U.S.C. §§ 1331 and 1343; Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-5(f); and 18 U.S.C. § 241. She claimed retaliation, racial harassment and discrimination, deprivation of dignity, defamation, and intentional and negligent infliction of emotional distress by UPS.

Plaintiff has been working as a UPS employee since October 2002, and was working as a package driver in November 2008, when she took a leave of absence upon a diagnosis of bipolar

---

[1] The Court considered Plaintiff's allegations in her amended complaint (doc. 9), her answers to the Court's questionnaire (doc.32), and the documents she submitted in response to the questionnaire (docs. 34, 61). Plaintiff's answers to the questions posed by the Court constitute an amendment to the filed complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

disorder.  She alleges that when she returned to work on March 31, 2009,[2] she faced a conspiracy to make her pay for filing a prior federal action against UPS.[3]  (doc. 9, p. 3.)  On her first day back at work, she failed the Department of Transportation test due to her bipolar disorder, was disqualified from driving, and was sent home with pay for a week while UPS determined where to place her.  (doc. 34-1, p. 37.)  UPS allegedly reasoned that it had not expected her to return to work.  (doc. 34-1, p. 37.)

Plaintiff alleges that given her driving disqualification, she was placed in the warehouse or "hub", where she had to clean package cars and check the oil and anti-freeze.  (doc. 34-1, p. 38.)  She claims that she was assigned car-cleaning duties when no other disqualified driver was assigned those duties and the drivers themselves were responsible for taking their cars to the carwash.  (doc. 9, p. 4.)  She claims she did not receive a time-card for either her "small sort" or her carwash assignments for three to four weeks, and she never received one for the car wash assignment.  (doc. 34-1, p. 38.)  She claims to be the first disqualified driver refused a timecard or clock-in number, and the only one required to work six days a week or work an unusual shift – 5 p.m. to 9 p.m. followed by 11 p.m. to 3 a.m.  (doc. 9, pp. 3-4.)  She was also allegedly assigned numerous temporary positions while other disqualified drivers were given permanent positions until they resumed driving.  (doc. 9, p. 4.)

Plaintiff resumed driving duties at UPS after an independent psychiatric evaluation in June

---

[2] The amended complaint indicates March 31, 2010, but other submissions, including the relevant charge of discrimination, clearly reflect that she returned to work on March 31, 2009.

[3] Plaintiff filed her prior action on April 10, 2007, and it was dismissed with prejudice five months later on a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).  *See Phillips v. United Parcel Serv., Inc. (Ohio)*, No. 3:07-CV-0617-P (N.D. Tex. filed Apr. 10, 2007) (docs. 1, 44, 45).  Her appeal was dismissed as untimely.  *See Phillips v. United Parcel Serv., Inc.*, No. 07-11083, unpub. op. (5th Cir. Dec. 4, 2007).  In October 2008, her petition for writ of certiorari was denied, *see Phillips v. United Parcel Serv., Inc.*, 129 S. Ct. 108 (2008), and a petition for rehearing was denied on December 15, 2008, *see Phillips v. United Parcel Serv., Inc.*, 129 S. Ct. 778 (2008).

2009 deemed her psychiatrically fit. (*See* doc. 34, pp. 42-45; doc. 34-1, p. 38.) She claims that her supervisor, Don Ford ("Ford"), then began approaching her with "falsified documents" that did not accurately reflect her work at the end of the work day. (doc. 9, p. 4.) She received an order from a grievance panel granting her access to her employee file, but UPS allegedly denied her that access for fear it would corroborate her allegations of falsified documents. (*Id.* at 4-5.) Plaintiff alleges that Ford told her that if someone was going to get fired, it would be her and not him, and on one particular day repeated the words "that's a warning letter" in response to everything she did.[4] (*Id.* at 5.) On another day, she claims, Ford denied her lunch until 5:45 p.m., dropped her at Subway around that time, returned with his high-beams on in broad daylight, and told her to drive while instructing her not to use her headlights. (*Id.* at 5-6.) On another occasion, manager Mike Brewer allegedly swerved his car closely in front of her while she was walking in the parking lot and later asked her if she thought he was going to hit her. (*Id.* at 6.) He also allegedly harassed Plaintiff while riding his motorcycle to work with its high beams on. (*Id.* at 1, 6.)

Plaintiff alleges that she was harassed by a "light" conspiracy that involved "more than a few" management personnel and hourly employees turning bright lights on in her path in order to protest, frustrate, humiliate and discourage her. (*Id.* at 6-7.) She claims that many UPS drivers had informed her of the conspiracy. (*Id.*) According to her, she was the only driver instructed not to use her lights and harassed with falsified documents and frivolous infractions to set her up for failure. (doc. 32, p. 1.) She states that UPS and its employees believe "they are justified in committing their crimes upon her, because [she] is a born 'minority.'" (doc. 9, p.7.)

---

[4] Plaintiff claims that she received a warning letter that was later removed from her employee file, and she provides a document dated August 14, 2009, showing that she received a warning letter for failing to follow instructions. (*See* doc. 9, p. 5.)

On August 9, 2010, UPS moved to dismiss this action under Fed. R. Civ. P. 12(b)(6). Plaintiff filed a response, UPS filed a reply, and the issues are now ripe for consideration.[5]

## II. MOTION TO DISMISS

UPS moves to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) on grounds that she has failed to state a claim against them upon which relief can be granted. (Mot. at 1.)

### A. Legal Standard

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings.[6] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept

---

[5] Plaintiff has filed an unauthorized surreply. (doc. 79.) The local rules of this Court "do not allow surreplies as a matter of course." *Tobias v. Price*, 2009 WL 3681981, at *4 n.6 (N.D. Tex. Nov. 4, 2009).Since Plaintiff has not sought leave to file her surreply, "it will not be considered." *Neely v. Khurana*, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Even if considered, the surreply would not affect the Court's findings or recommendation.

[6] In the Rule 12(b)(6) context, pleadings include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Since Plaintiff's answers to the Magistrate Judge's Questionnaire constitute an amendment, documents submitted in response to a questionnaire may also be considered in the Rule 12(b)(6) context.

4

as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

**B. Discrimination, Harassment, and Retaliation**

Defendant contends that Plaintiff has failed to state enough facts to allege a cause of action for retaliation, racial harassment, and discrimination under 42 U.S.C. § 1981 and Title VII. (Mot. at 3-9.) Since "the only substantive differences between the two statutes" – exhaustion and statute of limitations – are not at issue here, the merits of the claims under both statutes may be considered together. *See Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

**1.** *Racial Discrimination*

Defendant argues that Plaintiff's racial discrimination claim fails because she has not alleged that she was treated less favorably because of her race or that she suffered an adverse employment action. (Mot. at 6-7.)

Title VII makes it unlawful for employers to discriminate against individuals with respect

5

to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981similarly "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.,* 891 F.2d 1174, 1176 (5th Cir. 1990). The same substantive legal standards and evidentiary framework apply to claims under either statute. *See*, *e.g.*, *Jones*, 427 F.3d at 992.

Generally, a plaintiff must establish a prima facie case of discrimination by showing that she (1) is a member of a protected group, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). While a plaintiff need not plead a prima facie case of discrimination in the motion to dismiss context, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the prima facie elements are not entirely irrelevant, and no plaintiff is exempt from her obligation to allege sufficient facts to state all the elements of her claim. *See Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009). The ordinary rules for assessing the sufficiency of a complaint apply. *Swierkiewicz*, 534 U.S. at 511.

      a. <u>Treated Less Favorably Because of Race</u>

For claims of race discrimination under Title VII and § 1981, the alleged facts must show a plausible basis to infer that the defendant is liable for discrimination based on the plaintiff's race. It is not sufficient to merely assert a legal conclusion that the plaintiff was discriminated against because of a protected characteristic. *See Landavazo v. Toro Co.*, 301 F. App'x 333, 336 (5th Cir. 2008). Alleged facts must also be sufficient to at least create an inference that the plaintiff was discriminated against because of a protected characteristic. *Jordan v. Alternative Resources Corp.*,

458 F.3d 332, 346 (4th Cir. 2006). When a plaintiff sets out facts that do "not seem to have anything to do with" discrimination based on a protected characteristic, the claim is properly dismissed pursuant to Rule 12(b)(6). *Id.*

Here, Plaintiff's discrimination claim involves allegations that she was refused a timecard or clock-in number, had to work an unusual shift six days a week, was assigned miscellaneous work until she returned to her driving position, and was the target of a light conspiracy and of allegedly discriminatory conduct by Ford and Brewer. While Plaintiff states that she is a "born minority," she does not connect any minority status to UPS' alleged actions, and merely uses conclusory labels such as discrimination and racism to define that conduct. Without sufficient factual allegations that the complained of actions were taken because of her race, Plaintiff fails to state a claim of racial discrimination under Title VII or § 1981.

### b. Adverse Employment Action

To state a claim of racial discrimination, a plaintiff must also allege that he or she suffered from an adverse employment action. In the discrimination context, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (citation omitted). In this case, Plaintiff has not alleged facts to show that she suffered an adverse action with respect to any ultimate employment decision. Her factual allegations simply do not relate to hiring, granting leave, discharging, promoting, or compensating her. Consequently, she has failed to state a plausible discrimination claim upon which relief can be granted.

### 2. *Racial Harassment*

Defendant argues that Plaintiff's racial harassment claim fails because the alleged conduct

does not relate to her race and does not rise to a level of actionable harassment. (Mot. at 3-6.)

Harassment is actionable under Title VII only when "it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotation marks omitted). The elements of a harassment claim are the same under Title VII and § 1981. *Willrich v. Ctr. for Health Care Servs.*, 2007 WL 1300470, at *3 (W.D. Tex. May 3, 2007). Generally, a plaintiff must establish a prima facie case of harassment or hostile work environment by showing that (1) she is a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based on race or other protected characteristic, and (4) the harassment affected a term, condition, or privilege of employment. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001); *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 325 (5th Cir. 2009). When the alleged harasser is not a supervisor, the prima facie case also normally requires that "the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine*, 266 F.3d at 353.

The fourth element requires that the alleged behavior be "severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The totality of the circumstances are considered, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark Cnty. Sch. Dist.*, 532 U.S. at 270-71 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998)). Allegations of simple teasing, offhand comments, and isolated incidents, unless extremely serious,

do not suffice. *Id.* at 271 (quoting *Faragher*, 524 U.S. at 788). To withstand a motion to dismiss, Plaintiff's alleged facts must show sufficiently severe or pervasive harassment so as to create a hostile work environment. *See Puente*, 324 F. App'x at 426 n.3. A legal conclusion that she was racially harassed is insufficient.

As with her discrimination claims, Plaintiff's harassment claim also involves allegations that she was refused a timecard or clock-in number, had to work an unusual shift six days a week, was assigned miscellaneous work until she returned to her driving position, and was the target of a light conspiracy and of allegedly discriminatory conduct by Ford and Brewer, but her allegations do not connect the alleged actions of UPS to her race. Even if the alleged actions were taken because of her race, they are not sufficient to create an inference that the harassment was sufficiently severe or pervasive to create a hostile work environment. Some of the various isolated incidents of which Plaintiff complains were temporary inconveniences until she could be re-qualified for her driving position. Although she alleges that she was approached with falsified documents on numerous occasions, she does not allege that UPS used any falsified documents to take adverse employment actions against her. As for the alleged light conspiracy, use of headlights during the day while driving is neither physically threatening nor humiliating and has no bearing on Plaintiff's work performance. In short, no reasonable person could have believed that the alleged conduct by UPS amounted to harassment that altered the terms and conditions of Plaintiff's employment.

Plaintiff has failed to state a claim of racial harassment upon which relief can be granted, and the claim should be dismissed pursuant to Rule 12(b)(6).

### 3. *Retaliation*

Defendant argues that Plaintiff's retaliation claim fails because she has not alleged that she

suffered a materially adverse act. (Mot. at 8-9.)

Title VII makes it unlawful for employers to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Section 1981 likewise encompasses retaliation claims. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451-52 (2008). The same legal standards apply to claims under both statutes. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003). Generally, a plaintiff must establish a prima facie case of retaliation by showing that (1) she participated in protected activity, (2) her employer took an adverse employment action against her, and (3) the protected activity is causally connected to the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). To be actionable, an employment action must be "materially adverse" to a reasonable employee, which in the retaliation "context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68 (citation and internal quotation marks omitted). The action must be materially adverse in order "to separate significant from trivial harms." *Id.*

Here, Plaintiff primarily complains of isolated incidents and other actions that do not impact the terms of her employment and are insufficient to dissuade a reasonable employee from making or supporting a discrimination charge. Since Plaintiff has failed to allege a materially adverse employment action against her, she has failed to state a retaliation claim upon which relief can be granted. *Cf. Dotie v. Jones*, 2010 WL 2667680, at \*1 (N.D. Tex. July 1, 2010) (to state a § 1983 claim, a plaintiff must allege facts to show plausible causation and a material, retaliatory adverse act addressing § 1983 retaliation claim); *see also Harman v. Unisys Corp.*, 356 F. App'x 638, 641

(4th Cir. 2009) (to state a claim of retaliation claims under Title VII or § 1981, a plaintiff must allege that she suffered a materially adverse employment action after engaging in protected activity). Accordingly, her retaliation claim should be dismissed pursuant to Rule 12(b)(6).

## C. Defamation

Defendant moves to dismiss Plaintiff's defamation claim on grounds that she has not alleged a false or defamatory statement and has not pled special damages. (Mot. at 9-10.)

Plaintiff pursues her defamation claim under Texas law,[7] which defines defamation as "a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006). Plaintiff alleges that UPS defamed her when management personnel instructed hourly employees to stay away from her. (doc. 9 at 2, 8.) Instructions to stay away from someone, standing alone, are not defamatory, however; they merely express an opinion and do not constitute a false statement. *See Bell v. United Parcel Serv., Inc.*, 2000 WL 274274, at *3 (N.D. Tex. Mar. 10, 2000). Plaintiff's allegations are not sufficient to state a claim for defamation under Texas law and should be dismissed pursuant to Rule 12(b)(6).[8]

## D. Intentional Infliction of Emotional Distress

Defendant urges dismissal of Plaintiff's state-law claim of intentional infliction of emotional distress on grounds that the claim duplicates her Title VII claims and is based on alleged conduct that is not extreme and outrageous. (Mot. at 10-12.)

---

[7] *See* Resp. at 15, 22.

[8] In her response to the motion to dismiss, Plaintiff asserts that her defamation claim is based on UPS disclosing "personal and private medical information to peers and co-workers." (Pl.'s Resp. at 15.) Because the Court may not look beyond the pleadings when considering a motion to dismiss, it does not consider additional facts or claims raised in a response. *Hill v. Hunt*, No.3:07-CV-2020-O, 2010 WL 54756, at *4 (N.D. Tex. Jan. 4, 2010).

Intentional infliction of emotional distress is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). To establish this claim under Texas law, a plaintiff must show (1) intentional or reckless conduct by the defendant (2) that was extreme and outrageous and (3) caused the plaintiff severe emotional distress. *Id.* at 445. Conduct qualifies as extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). As a gap-filler tort, this claim may be preempted by Title VII or other statutory remedies. *See Watkins v. Tex. Dep't Crim. J.*, 269 F. App'x 457, 464-65 (5th Cir. 2008); *Ameen v. Merck & Co., Inc.*, 226 F. App'x 363, 372 (5th Cir. 2007); *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549-50 (N.D. Tex. 2005).

Since Plaintiff relies on the same alleged conduct as part of her discrimination, harassment, and retaliation claims, her claim of intentional infliction of emotional distress is preempted. Assuming that the claim is not preempted, *see Watkins*, 269 F. App'x at 465, Plaintiff has not alleged extreme and outrageous conduct by UPS. She alleges that Brewer swerved at her on one occasion in the parking lot, and that she was harassed by him while he rode his motorcycle with his high beams on, while on the way to work. This conduct neither goes beyond all possible bounds of decency nor rises to the level of atrocious behavior that is utterly intolerable in a civilized community. "Occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society." *GTE Sw., Inc., v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999). Since

Plaintiff has not alleged the type of reprehensible conduct by UPS that supports a claim of intentional infliction of emotional distress, this claim should be dismissed as well.

### E. Negligent Infliction of Emotional Distress

Defendant seeks dismissal of Plaintiff's claim of negligent infliction of emotional distress on grounds that it is not recognized in Texas. (Mot. at 12-13.) Plaintiff responds that her claim "is recognized by our Civil Rights and Federal laws." (Resp. at 22.)

Texas law does not recognize a claim for negligent infliction of emotional distress. *See Hagen v. Hagen*, 282 S.W.3d 899, 910 (Tex. 2009) (noting that negligent infliction of emotional distress "is not a valid claim"); *Abraham v. Sw. Bell Yellow Pages, Inc.*, 3 F.3d 438, 1993 WL 347193, at *4 (5th Cir. 1993) (noting that Texas does "not recognize a cause of action for negligent infliction of emotional distress arising out of an employment context"). Additionally, there is no constitutional right to be free from negligent infliction of emotional distress. *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985); *accord Flores v. City of Palacios*, 381 F.3d 391, 401 n.8 (5th Cir. 2004) (recognizing that "the Constitution does not provide an *independent* right to be free from emotional distress"); *Shinn ex. rel. Shinn v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996) (recognizing that "there is no constitutional right to be free from emotional distress."). Since neither Texas nor federal law recognizes a negligent infliction of emotional distress claim, the claim should be dismissed for failure to state a claim upon which relief can be granted.

### F. Deprivation of Dignity

Defendant moves to dismiss Plaintiff's deprivation-of-dignity claim on grounds that it is not recognized under Texas law. (Mot. at 13.) Plaintiff has alleged deprivation of dignity in connection

13

with her Fourteenth Amendment claim, equating her right to dignity as an individual's "innate right to respect and ethical treatment." (*See* Resp. at 23-24.) Her deprivation-of-dignity claim should therefore be construed as a Fourteenth Amendment claim.

## G. Fourteenth Amendment

Defendant moves to dismiss Plaintiff's Fourteenth Amendment claims on grounds that it is not a governmental actor subject to that Amendment. (Mot. at 13-14.)

The Fourteenth Amendment applies only to acts by governmental actors. *Mangum v. United Parcel Servs.*, No. 3:09-CV-0385-D, 2009 WL 4823018, at *2 (N.D. Tex. Dec. 14, 2009) (accepting recommendation). Because Plaintiff has not alleged that UPS is a governmental actor or was acting in any capacity other than as a private corporation, she has failed to state a claim under the Fourteenth Amendment upon which relief can be granted. *See id.* (granting 12(b)(6) motion to dismiss Fourteenth Amendment claim because there were no allegations that UPS was acting in any capacity other than a private corporation). Plaintiff's deprivation-of-dignity claim, and any other claim she pursues under the Fourteenth Amendment, should accordingly be dismissed.

## H. Criminal Conspiracy

Defendant moves for dismissal of Plaintiff's criminal conspiracy claim under 18 U.S.C. § 241 on grounds that she has no private right of action under the statute. (Mot. at 14.)

"Private citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 300 (5th Cir. 2003) (per curiam)). In other words, "a private citizen cannot enforce criminal statutes in a civil action." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007). Since § 241 is a criminal statute that defines "conspiracy against rights"

and establishes a criminal punishment for its violation, it is not enforceable in this civil action. Plaintiff's § 241 claim should therefore be dismissed for failure to state a claim upon which relief can be granted.

## I. **Opportunity to Amend**

Notwithstanding Plaintiff's failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to court order, *see Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 3:96-CV-2923-D, 3:97-CV-0353-D, 2004 WL 789870, at *2 (N.D. Tex. Apr.12, 2004); *Sims*, 2001 WL 627600, at *2, or when a *pro se* plaintiff seeks to amend his complaint in response to a recommended dismissal, *see Swanson v. Aegis Commc'ns Group, Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, two months have passed since Defendant filed its motion to dismiss. Plaintiff's response and surreply provide facts not alleged in the pleadings, and Plaintiff indicates that she has

15

other undisclosed facts. Her surreply indicates a desire to amend her complaint, if necessary. Considering all the circumstances, Plaintiff should be accorded an opportunity to amend her complaint to allege sufficient facts to state a claim against Defendant.

### III. CONCLUSION

*Defendant's Rule 12(b)(6) Motion to Dismiss*, filed August 9, 2010, (doc. 67) should be **GRANTED**. Unless Plaintiff files a Second Amended Complaint that states a claim against Defendant UPS within the fourteen days allotted for objections to this recommendation or a deadline otherwise set by the Court, the claims against UPS should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED on this 30th day of November, 2010.**

*[signature]*
**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**