# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DELORIS PHILLIPS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 3:10-CV-1197-G-BH |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| Defendant. | ) | Referred for Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Third Amended Complaint*, filed February 7, 2011 (doc. 105). Based on the relevant filings[1] and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

Plaintiff filed this action against her current employer, United Parcel Service ("UPS"), on June 16, 2010. Her original and amended complaints asserted claims for retaliation, racial harassment, racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981; deprivation of dignity; defamation; intentional and negligent infliction of emotional distress; conspiracy under 18 U.S.C. § 241; and violation of the Fourteenth Amendment of the United States Constitution. On November 30, 2010, this court recommended dismissal of all of Plaintiff's

---

[1] Plaintiff's original, amended, and third amended complaint (docs. 1, 9, 103) and the documents attached to the third amended complaint (doc.104) have all been considered for purposes of this motion. In the Rule 12(b)(6) context, pleadings also include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Also considered were Plaintiff's answers to the Magistrate Judge's questionnaire and supporting documents (docs. 34, 61), which constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Because the local rules of this Court "do not allow surreplies as a matter of course", *Tobias v. Price*, 2009 WL 3681981, at *4 n.6 (N.D. Tex. Nov. 4, 2009), Plaintiff's unauthorized sur-reply (docs. 118 & 119) will not be considered. *Neely v. Khurana*, 2009 WL 1605649, at *3 n.4 (N.D. Tex. June 5, 2009). Even if considered, however, it would not affect the ultimate findings or recommendation.

claims for failure to state a claim upon which relief can be granted, unless she filed an amended complaint alleging additional facts to support her causes of action. On January 18, 2011, Plaintiff filed a third amended complaint reasserting her original causes of action, as well as asserting new causes of action for racial discrimination under the Texas Commission on Human Rights Act ("TCHRA"); gender-based discrimination and harassment under Title VII, age-based discrimination under the Age Discrimination in Employment Act ("ADEA"), wrongful termination, deprivation of rights under 18 U.S.C. § 242, malicious deprivation of dignity and liberty under 42 U.S.C. § 1983, conspiracy to deprive her of her rights under 42 U.S.C. § 1985, and gender discrimination under Title IX of the of the Education Amendments of 1972 ("Title IX").

Plaintiff alleges that UPS hired her as a pre-loader in October 2002; it advanced her to part-time management within ninety days and to a full-time driver position within a year and four months of being hired. (doc. 103, pp. 13-14.) Shortly thereafter, in June 2004, UPS' management allegedly began to harass her about becoming a full-time supervisor, but she refused the offers. (*Id.*, pp. 14-15.) Upper-management then allegedly began "floating" her to different centers in order to frustrate and humiliate her and conspired with lower-management to execute its plans. (*Id.*, pp. 15-16.) By 2006, even though Plaintiff was a senior driver with seniority over at least two other employees, management allegedly moved her around instead of the less senior drivers. (*Id.*, p. 16.) It also allegedly worked drivers less senior drivers than Plaintiff while not giving her any work because she had refused to advance to full-time management. (*Id.*, p. 16.)

Plaintiff filed a grievance on March 30, 2006, for not being worked, and another one in April 2006 "for harassment and not being worked." (*Id.*, pp. 15-16.) According to Plaintiff, this angered upper-management even more. (*Id.*, p. 16.) On April 10, 2007, Plaintiff filed a civil action against

UPS that was dismissed with prejudice for failure to state a claim. *See Phillips v. UPS*, No. 3:07-CV-0617-P (N.D. Tex. Apr. 10, 2007). The Fifth Circuit dismissed her appeal as untimely in December 2007, and the United States Supreme Court denied a writ of certiorari and a petition for rehearing in October and December of 2008 respectively. *See Phillips v. UPS*, No. 07-11083, unpub. op. (5th Cir. Dec. 4, 2007); *Phillips v. UPS*, 129 S. Ct. 108 (2008); *Phillips v. UPS*, 129 S. Ct. 778 (2008). Plaintiff alleges that the civil action and the subsequent appeals enraged management even further. (doc. 103, p. 17.)

Plaintiff claims that she was on medical leave from March 31, 2006 to March 31, 2009. (*Id.*, p. 21.) While on medical leave, she allegedly received a notice of discharge dated January 23, 2008. (*Id.*, p. 17.) She claims that she disputed the "wrongful termination" through the grievance process on January 25, 2008, and she received a decision withdrawing her discharge letter on February 1, 2008. (*Id.*, p. 18.) When she returned to work on March 31, 2009, she claims to have faced retaliation for filing the prior federal action against UPS. (*Id.*, p. 18; doc. 9, p. 3.) On her first day back at work, her computer began to malfunction, and she was misdiagnosed with bipolar disorder by a UPS-referred doctor. (doc. 103, pp. 19-21.) The doctor allegedly told her that she could not pass the Department of Transportation ("DOT") test because she had bipolar disorder and was taking medications that were not DOT-approved. (*Id.*, p. 19.) Plaintiff claims that UPS defamed, humiliated, and shamed her by divulging her private medical information about the bipolar disorder within the workplace and instructing hourly employees to stay away from her. (*Id.*, p. 20-21; doc. 9, pp. 2, 8.) Her co-workers allegedly told her that they had heard of her bipolar disorder and asked her if she was bipolar. (doc. 103, p. 20.)

Based on the alleged misdiagnosis of bipolar disorder, Plaintiff was disqualified from

driving.  (doc. 34-1, p. 37.)  She claims that UPS tried to humiliate her by placing her in the "hub" to clean package cars and check their oil and anti-freeze, something other employees questioned her about.  (doc.9, p. 3-4.)  She claims that UPS assigned her car-cleaning duties when no other disqualified driver was assigned those duties, and the drivers themselves were responsible for taking their cars to the car wash.  (*Id.*, p. 4.)  UPS also allegedly denied her the right to have a semi-permanent position and displace two part-time less senior employees until she returned to full-time driving.  (doc. 103, p. 22.)  She claims that she did not receive a time-card until the latter part of May 2009, could not use her employee ID number to clock in, and had to write her time down on a sticky note.  (*Id.*, p. 22)  She claims to be the first disqualified driver refused a timecard or clock-in number, and the only one required to work six days a week or work an unusual shift – 5 p.m. to 9 p.m. followed by 11 p.m. to 3 a.m.  (doc. 9, pp. 3-4; doc. 103, p. 22.)  UPS also allegedly assigned her numerous temporary positions while giving other disqualified drivers permanent positions until they resumed driving.  (doc. 9, p. 4; doc. 103, p. 23.)

In June 2009, an independent psychiatric evaluation allegedly found Plaintiff psychiatrically fit to perform the duties of a driver.  (doc. 103, p. 20; doc. 104-1, pp. 16-19.)  She claims that her supervisor, Don Ford ("Ford"), then began approaching her with "falsified documents" that did not accurately reflect her work at the end of the work day.  (doc. 9, p. 4.)  She received an order from a grievance panel granting her access to her employee file, but UPS allegedly denied her that access for fear it would corroborate her allegations of falsified documents.  (*Id.*, pp. 4-5.)  Plaintiff alleges that Ford told her that "he had pressure on him" and that if someone was going to get fired, it would be her and not him.  (*Id.*, p. 5.)  She also claims that on one particular day, he repeated the words "that's a warning letter" in response to everything she did, and soon thereafter, she received a

warning letter which she disputed, and which UPS allegedly removed from her file. (*Id.*, p. 5.) On another day, she claims Ford denied her lunch until 5:45 p.m., dropped her at Subway around that time, returned with his high-beams on in broad daylight, and told her to drive while instructing her not to use her headlights. (*Id.*, pp. 5-6.) On yet another occasion, manager Mike Brewer allegedly swerved his car in front of her with a smirk on his face while she was walking in the parking lot, and later asked her if she thought he was going to hit her. (*Id.*, p. 6.) He also allegedly harassed Plaintiff while riding his motorcycle to work with its high beams on. (*Id.*, pp. 1, 6.)

Plaintiff alleges that she was harassed by a "light" conspiracy that involved "more than a few" management personnel and hourly employees turning bright lights on in her path in order to protest, frustrate, humiliate and discourage her. (*Id.*, pp. 6-7.) She claims that many UPS drivers had informed her of the conspiracy. (*Id.*) Plaintiff alleges that UPS was so furious with her that it pulled a youth cap that she had ordered for her daughter off the market, did not send her a UPS catalog she had ordered, and put a special edition UPS basketball "on back order forever" after she ordered it for her grandson. (doc. 103, pp. 24-25.) She claims that UPS' girl's youth "Funky Monkey" cap with "Distressed" pink hearts is designed, approved, and marketed to make a mockery of minorities, particularly "Black African-Americans." (*Id.*, p. 26.)

UPS also allegedly unjustly terminated her on October 1, 2010, when it sent her a letter under a labor agreement stating that she had not reported back to work since September 27, 2010, and that if she did not return to work by October 8, 2010, she would be considered as having voluntarily quit her position. (*Id.*, p. 27; doc. 103-4, p. 11.) She claims that she filed a grievance concerning the "warning letter" with the Teamster Local 767 union, which reached a settlement with UPS that "the grievance will be held in abeyance until such time as the grievant return to active

employment in the craft." (doc. 103, p. 27; doc. 104-4, pp. 30-31.) She claims to have filed numerous grievances with her union concerning the allegedly discriminatory and retaliatory actions against her. (doc. 103, p. 5.) She also filed a charge of discrimination and retaliation with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC"). (*Id.*, p. 9; doc. 34, pp. 6, 18-19.)

UPS now moves to dismiss this action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[2] With a timely filed response and reply, the issues are now ripe for consideration.

## II. RULE 12(b)(6) STANDARD

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord*

---

[2] UPS explains that because dismissal of all claims asserted in Plaintiff's second amended complaint has previously been recommended, its current motion only addresses the new facts and claims asserted in the third amended complaint. (*See* doc. 83; Mot. at 1 n. 1.) The arguments raised in the previous motion to dismiss have therefore also been considered.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

## III. RACIAL DISCRIMINATION

UPS moves to dismiss Plaintiff's claim for racial discrimination under Title VII, § 1981, and the TCHRA, Tex. Lab. Code § 20.001 *et seq.*

## A. Title VII and § 1981

UPS contends that Plaintiff has failed to state a claim for racial discrimination under § 1981 and Title VII. It specifically argues that Plaintiff has not alleged that she was treated less favorably because of her race or that she suffered an adverse employment action.

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981 similarly "serves as

a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Carroll v. Gen. Accident Ins. Co. of Am.,* 891 F.2d 1174, 1176 (5th Cir. 1990). The same substantive legal standards and evidentiary framework apply to claims under either statute. *See Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Generally, a plaintiff must establish a prima facie case of discrimination by showing that she (1) is a member of a protected group, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

While a plaintiff need not plead a prima facie case of discrimination in the motion to dismiss context, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the prima facie elements are not entirely irrelevant, and no plaintiff is exempt from her obligation to allege sufficient facts to state all the elements of her claim. *See Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009). The ordinary rules for assessing the sufficiency of a complaint apply. *Swierkiewicz*, 534 U.S. at 511. For claims of racial discrimination under Title VII and § 1981, the alleged facts must show a plausible basis to infer that the defendant is liable for discrimination based on the plaintiff's race. *See Landavazo v. Toro Co.*, 301 F. App'x 333, 336 (5th Cir. 2008). It is not sufficient to merely assert a legal conclusion that the plaintiff was discriminated against because of a protected characteristic. *Id.* Alleged facts must also be sufficient to at least create an inference that the plaintiff was discriminated against because of a protected characteristic. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 346 (4th Cir. 2006). When a plaintiff sets out facts that do "not seem to have anything to do with" discrimination based on a protected characteristic, the claim is properly dismissed pursuant to Rule 12(b)(6). *Id.*

Here, Plaintiff's discrimination claim involves allegations that UPS moved her around different centers, unjustly terminated her in January 2008 and October 2010, misdiagnosed her with bipolar disorder, disqualified her as a driver, told other employees that she was bipolar, placed her in the hub to clean package cars and change their oil and anti-freeze, failed to place her in a semi-permanent position, refused her a timecard or clock-in number, made her work an unusual shift, assigned her numerous temporary positions until she returned to her driving position, targeted her with a light conspiracy, subjected her to allegedly discriminatory conduct by Ford and Brewer, and failed to deliver the items she had ordered from it.

While Plaintiff states that she is a "born minority," she does not connect any minority status to UPS' alleged actions, and uses mere conclusory labels such as discrimination and racism to define that conduct. Her assertion that the "Funky Monkey" cap is meant to mock minorities, particularly African Americans, is conclusory and unsupported by any factual allegations. She admits that UPS advanced her to a part-time manager position and a full-time driver position within a short time of hiring her, and started to "harass" her only after she refused its offers to become a full-time supervisor. Even though she makes references in her response to disparate pay and differences in promotions between minorities and non-minorities at UPS, she did not make those allegations in her complaints. *See Hill v. Hunt*, 2010 WL 54756, at *4 (N.D. Tex. Jan. 4, 2010) (citing *Spivey*, 197 F.3d at 774) (in deciding a motion to dismiss, the court may not look beyond the pleadings). Even if she had, the assertions are too conclusory to state a claim for relief.

Without sufficient factual allegations that the complained of actions were taken because of her race, Plaintiff has failed to state a claim of racial discrimination under Title VII or § 1981. Because dismissal is required on this ground, consideration of UPS' alternate ground for dismissal

of her racial discrimination claim is unnecessary.

## B. TCHRA

To the extent that Plaintiff seeks to assert a racial discrimination claim under the TCHRA, UPS seeks to dismiss that claim as time-barred because she did not file her complaint within sixty days of receiving her notice of rights to sue from the TWC.

The TCHRA prohibits an employer from discriminating against an individual with respect to her compensation, terms, conditions, or privileges of employment because of race, color, disability, religion, sex, and national origin. *See* Tex. Lab. Code § 21.051. It provides that "within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent." *Id.* § 21.254. The Fifth Circuit has interpreted this language to mean that a TCHRA complainant must file his lawsuit within sixty days after receiving the TWC's notice of right to file a civil action. *See Vielma v. Eureka Co.*, 218 F.3d 458, 463 (5th Cir. 2000); *Hansen v. Aon Risk Servs.*, 473 F. Supp. 2d 743, 748 (S.D. Tex. 2007).

Here, Plaintiff has attached to her complaint, a TWC notice of right file civil action, dated February 16, 2010. (doc. 104-3, p. 26.) However, she did not file her complaint until June 16, 2010, which is over a hundred days after she received the TWC notice of right to sue. Her TCHRA claim is therefore time-barred and must be dismissed for failure to state a claim.

## IV.  RACIAL HARASSMENT

UPS contends that Plaintiff has failed to state enough facts to allege a cause of action for racial harassment under § 1981 and Title VII. It specifically argues that the alleged actions or comments do not relate to her race, do not rise to a level of actionable harassment, and are not alleged to have a material, adverse affect on a term, condition, or privilege of employment.

Harassment is actionable under Title VII only when "it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotation marks omitted). The elements of a harassment claim are the same under Title VII and § 1981. *Willrich v. Ctr. for Health Care Servs.*, 2007 WL 1300470, at *3 (W.D. Tex. May 3, 2007). Generally, a plaintiff must establish a prima facie case of harassment or hostile work environment by showing that (1) she is a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based on race or other protected characteristic, and (4) the harassment affected a term, condition, or privilege of employment. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001); *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 325 (5th Cir. 2009). When the alleged harasser is not a supervisor, the prima facie case also normally requires that "the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine*, 266 F.3d at 353.

The fourth element requires that the alleged behavior be "severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The totality of the circumstances are considered, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Breeden*, 532 U.S. at 270-71 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998)). Allegations of simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not suffice. *Id.* at 271 (quoting *Faragher*, 524 U.S. at 788). To withstand a motion to dismiss, a plaintiff's

alleged harassing behavior must be severe or pervasive enough to create a hostile work environment. *Puente*, 324 F. App'x at 426 n.3. A legal conclusion that she was racially harassed is insufficient.

As with her racial discrimination claim, Plaintiff's harassment claim involves allegations that UPS moved her around different centers, unjustly terminated her in January 2008 and October 2010, misdiagnosed her with bipolar disorder, disqualified her as a driver, told other employees that she was bipolar, placed her in the hub to clean package cars and change their oil and anti-freeze, failed to place her in a semi-permanent position, refused her a timecard or clock-in number, made her work an unusual shift, assigned her numerous temporary position until she returned to her driving position, targeted her with a light conspiracy, subjected her to allegedly discriminatory conduct by Ford and Brewer, failed to deliver some items she had ordered, and designed the "Funky Monkey" cap in order to mock minorities, especially African Americans. Assuming that these allegations are sufficient to create an inference of harassment or relate to a term, condition or privilege of employment, there are no still factual allegations in the complaint to suggest that the alleged actions were taken based on her race.

Plaintiff has failed to state a claim of racial harassment upon which relief can be granted, and the claim should be dismissed.

## V. RETALIATION

UPS argues that Plaintiff's retaliation claim under Title VII fails because some of the alleged actions do not rise to the level of a materially adverse act, and others are not causally connected to the protected activity of filing a lawsuit.

Title VII makes it unlawful for employers to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Section 1981 likewise encompasses retaliation claims. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451-52 (2008). The same legal standards apply to claims under both statutes. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003). Generally, a plaintiff must establish a prima facie case of retaliation by showing that (1) she participated in protected activity, (2) her employer took an adverse employment action against her, and (3) the protected activity is causally connected to the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). To be actionable, an employment action must be "materially adverse" to a reasonable employee, which in the retaliation "context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). The action must be materially adverse in order "to separate significant from trivial harms." *Id.*

Here, the allegations underlying Plaintiff's retaliation claim are that UPS moved her to other centers in 2006, tried to force her to go home from work while allowing other less senior drivers to work, unjustly terminated her twice, caused her computer to malfunction upon her return to work, temporarily disqualified her from driving based on a misdiagnosis, divulged her misdiagnosis in the workplace, assigned her miscellaneous job duties, made her work an unusual shift, denied her the right to displace two part-time and less senior employees, made her manually record her hours, once denied her lunch until 5:45 p.m., approached her with falsified documents, sent her a warning letter, targeted her with a light conspiracy, subjected her to allegedly discriminatory conduct by Ford and Brewer, failed to deliver some items she had ordered from it, and created the "Funky Monkey" cap

in order to mock minorities.

The first two allegations cannot form the basis of a Title VII retaliation claim because they occurred before she engaged in the alleged protected activity of filing a lawsuit in 2007, and therefore cannot establish a causal link between the protected activity and the alleged retaliatory actions. *See Dixon v. Moorse Wallace, Inc.*, 236 F. App'x 936, 937 (5th Cir. 2007). Most of the remaining alleged actions do not rise to the level of adverse employment actions because some of them do not impact the terms or conditions of her employment, while others are isolated incidents and minor annoyances that are insufficient to dissuade a reasonable employee from making or supporting a discrimination charge. *See Browning v. Sw. Research Inst.*, 288 F. App'x 170, 179 (5th Cir. 2008) (no adverse employment action where employer allegedly used rude and abusive language towards the employee and threatened her employment); *King v. Louisiana*, 294 F. App'x 77, 85-86 (5th Cir. 2008) (even taken in a light most favorable to plaintiff, allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation); *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (disciplinary mark-ups are not materially adverse employment actions in the retaliation context).

Although a change in schedule may constitute an adverse employment action, Plaintiff has failed to make any allegations that the schedule change affected her adversely or that it was more than a temporary inconvenience until she was medically cleared for driving. *See White*, 548 U.S. at 69 (noting that context matters and observing that a "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children"). A temporary change in schedule, or even job duties for that matter, if

14

implemented for a sound reason and unaccompanied by any change in benefits or opportunities for promotion, would not dissuade a reasonable worker from making a charge of discrimination, and therefore does not constitute an adverse employment action.  Notably, Plaintiff does not allege that her schedule change and her miscellaneous job assignments affected her job title, salary, benefits, or opportunities for promotion.  *See Escalante v. Holder*, 2011 WL 1528472, at *11-12 (W.D. Tex, Apr. 20, 2011) (temporary schedule change was not an adverse action because it was implemented for a sound reason, and temporary transfer was not an adverse action because it did not affect employee's job title, benefits, or salary).

The only actions that may rise to the level of an adverse employment action and allegedly occurred after the protected activity were the notices of termination, since a notice of termination well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  There are no allegations giving rise to a plausible claim that they were causally connected to the filing of her civil action on October 7, 2010, however.  The timing between the two actions and the protected activity (between nine months and two years), standing alone, is too attenuated to supply the necessary causal connection.  *See Bell v. Bank of Am.*, 171 F. App'x 442, 444 (5th Cir. 2006) (holding that a seven month period did not support a causal connection).  Because Plaintiff has failed to state a retaliation claim upon which relief can be granted, this claim should be dismissed with prejudice.

## VI.  GENDER AND AGE-BASED CLAIMS

UPS also moves to dismiss Plaintiff's gender-based discrimination and harassment claim under Title VII, and her age-based discrimination claim under the ADEA.  It argues that Plaintiff failed to include these claims in her EEOC charge and has therefore failed to exhaust her remedies

with respect to these claims.

As noted, Title VII makes it unlawful for an employer to discriminate against an individual because of her sex. 42 U.S.C. § 2000e-2(a). The ADEA similarly makes it unlawful for an employer to discriminate against an individual based on her age. 29 U.S.C. § 623(a)(1). Before an individual can pursue a Title VII or ADEA claim in federal court, she must exhaust her available administrative remedies by filing a charge with the EEOC. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (Title VII); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010) (ADEA). Filing of a charge with the EEOC is a condition precedent to the filing of a Title VII or ADEA action. *Stith v. Perot Sys. Corp.*, 122 F. App'x. 115, 118 (5th Cir. 2005). If a plaintiff files a charge with the EEOC, the scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir. 1984); *see also Stith*, 122 F. App'x. at 118 (citing *Sanchez*, 431 F.2d at 466).

Here, Plaintiff filed a charge of discrimination and retaliation with the EEOC, but only checked the box for race as the basis for her discrimination claim. (doc. 34, pp. 18-19.) The allegations she described in her charge only related to race and did not concern her age or gender. (*Id.*) The charge therefore does not exhaust her administrative remedies with respect to her age and gender-based claims. While she alleged sex and age-based discrimination in an intake questionnaire for the TWC (*Id.*, p. 6.), she did not include, and there is no reason why she could not have included,

those allegations in her actual charge. *See Harris v. Honda*, 2005 WL 2416000, at \*2, (N.D. Tex. Sept. 30, 2005). The intake questionnaire is not construed as a charge when the complainant has submitted an actual charge. *Donnelly v. St. John's Mercy Med. Ctr.*, 635 F.Supp. 2d 970, 999 (E.D. Mo. 2009) (summarizing cases in this area). Since Plaintiff has failed to exhaust her administrative remedies with respect to her sex and age discrimination and harassment claims, they should be dismissed for failure to state a claim.

## VII. DEPRIVATION OF DIGNITY

Defendant moves to dismiss Plaintiff's deprivation-of -dignity claim on grounds that it is not recognized under Texas law. Her deprivation of dignity claim is more properly construed as either a Fourteenth Amendment claim, a claim for deprivation of rights under § 242, or a claim for a constitutional or federal violation under § 1983. The claim should therefore be treated as a federal claim under the Fourteenth Amendment, § 242, and § 1983.

## VIII. FOURTEENTH AMENDMENT

Defendant moves to dismiss Plaintiff's Fourteenth Amendment claims on grounds that it is not a governmental actor subject to that Amendment.

The Fourteenth Amendment applies only to acts by governmental actors. *Mangum v. UPS*, 2009 WL 4823018, at \*2 (N.D. Tex. Dec. 14, 2009) (accepting recommendation). Because Plaintiff has not alleged that UPS is a governmental actor or was acting in any capacity other than as a private corporation, she has failed to state a claim under the Fourteenth Amendment upon which relief can be granted. *See id.* (granting 12(b)(6) motion to dismiss Fourteenth Amendment claim because there were no allegations that UPS was acting in any capacity other than a private corporation). Plaintiff's deprivation-of-dignity claim, and any other claim she pursues under the Fourteenth Amendment,

should accordingly be dismissed.

### IX.  18 U.S.C. §§ 241, 242

UPS moves for dismissal of Plaintiff's criminal conspiracy claim under 18 U.S.C. § 241 and her deprivation of rights claim under § 242 on grounds that she has no private right of action under these statutes.

"Private citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 300 (5th Cir. 2003) (per curiam)).  They cannot enforce criminal statutes in a civil action.  *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007). Since § 241 is a criminal statute that defines "conspiracy against rights" and establishes a criminal punishment for its violation, it is not enforceable in this civil action.  *See Hussein v. Gates*, 657 F. Supp. 2d 77, 81 (D.C. Cir. 2009) (holding that § 241 is a criminal statute that dos not expressly create a private right of action upon which a plaintiff may sue a defendant).  Likewise, § 242 is also a criminal statute that defines "deprivation of rights under color of law" and establishes a criminal punishment for its violation and is not enforceable in a civil action.  *See Rockefeller v. U.S. Court of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (holding that as a criminal statute, § 242 does not convey a private right of action).  Plaintiff's § 241 conspiracy claim, her deprivation-of-dignity claim, and any other claim she pursues under § 242, should be dismissed for failure to state a claim upon which relief can be granted.

### X.  42 U.S.C. § 1983

UPS urges dismissal of Plaintiff's § 1983 claim on grounds that UPS is not a state actor.

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts showing that she was deprived of a right secured by the Constitution and the laws of the United States, and that the deprivation of that right was by a defendant acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Here, UPS is a private party that is typically not subject to liability under § 1983. Although in certain circumstances, private parties may be acting "under color of state law" and thus held liable under § 1983, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989), Plaintiff makes no allegation that UPS is liable as a state actor under § 1983. Therefore any constitutional claims asserted against it under § 1983 fail to state a claim upon which relief can be granted. *See Brodzki v. United States*, 2010 WL 183937, at *2 (N.D. Tex. Jan. 15, 2010) (recommending dismissal of § 1983 claim against UPS on same grounds).

## XI. VIOLATION OF § 1985

UPS also moves to dismiss Plaintiff's conspiracy claim under § 1985(3) on grounds that she has failed to plead that UPS engaged in a conspiracy with a person other than itself.

"Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Subsection 3, applicable here, prohibits a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law. 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose

of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. *See Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987); *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). It is well-established that a "corporation cannot conspire with itself any more than a private individual can" and that the "acts of the agent are the acts of the corporation.'" *Hilliard*, 30 F.3d at 653 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952.) If all of the alleged conspirators are members of the same corporation, a conspiracy under § 1985(3) does not involve two or more people. *See id.*

Plaintiff alleges that UPS' "corporate, upper management, and lower management had a meeting of the minds" to violate her rights and that the violations were "no doubt a collaborative effort o[f]all parties involved." (doc. 103, pp. 29-30.) She also alleges that they charged her with "frivolous infractions," unjustly terminated her twice, conspired to deprive her of her liberty, targeted her with a light conspiracy, and conspired to deprive her of a fair and equal education by ongoing computer issues. (*Id.*; doc. 9, pp. 5-6.) She further alleges that the conspiracy was well known in the Dallas Police Department ("DPD") and that she asked Dallas County Community College ("DCCC") to investigate the ongoing computer issues. (*Id.*, p. 30.) Because these allegations only state that UPS was in a conspiracy with itself, they are insufficient to state a conspiracy claim under § 1985(3).

Even if the complaint can liberally be construed to allege that UPS conspired with DPD and DCCC, it contains only conclusory allegations that the entities conspired to deprive her of her rights. Mere conclusory allegations are insufficient to state a § 1985 claim; plaintiffs "must plead the

operative facts upon which their claim is based." *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987) (citations omitted). The facts must be specific enough with respect to a charge of conspiracy, which, in essence, is an understanding or agreement between the conspirators. *Id.* at 424-425 Plaintiff's assertions are too vague and conclusory to infer a meeting of the minds or an agreement to deprive Plaintiff of some right or privilege set forth in § 1985, and are therefore insufficient to raise a plausible claim of a conspiracy. *See Davis v. City of Garland*, 2011 WL 1466163, at *5 (N.D. Tex. Apr. 15, 2011). The claim should therefore be dismissed.

## XII.  TITLE IX

UPS moves to dismiss Plaintiff's gender discrimination claim under Tile IX on grounds that there are no factual allegations to support the claim, and the basis of the claim is unclear since UPS is a package delivery company and not an educational institute.

"Title IX proscribes gender discrimination in education programs or other activities receiving federal financial assistance." *Pederson v. La State Univ.*, 213 F.3d 858, 877 (5th Cir. 2000) (citing *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 514 (1982)). Title IX contains two core provisions. *Id.* The first core provision mandates that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . " *Bell*, 456 U.S. at 514 (citing 20 U.S.C. § 1681(a)). The second core provision authorizes each agency awarding federal financial assistance to promulgate regulations ensuring that aid recipients adhere to that mandate. *Id.* (citing 20 U.S.C. § 1682). "The ultimate sanction for noncompliance is termination of federal funds or denial of future grants." *Id.* at 514-15.

With respect to her Title IX claim, Plaintiff alleges that she has had ongoing computer issues

at DCCC, El Centro College, and Mountain View College, and has requested investigations into those issues. Her vague and conclusory allegations about ongoing computer issues at the different colleges are simply not enough to state a facially plausible claim of gender discrimination against UPS under Title IX. Notably, there are no factual allegations suggesting that UPS is a federally funded program and that it discriminated against her based on her gender. Her claim for gender discrimination under Title IX should accordingly be dismissed.

## XIII. WRONGFUL TERMINATION

To the extent that Plaintiff's allegations of wrongful termination and unjust discharge can be construed as a common law wrongful termination claim, UPS argues it is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that resolution of the claim requires deferral to the general grievance and binding arbitration process in the UPS-Teamsters collective bargaining agreement.

Section 301 provides an employee with a federal cause of action against his employer for breach of the collective bargaining agreement. *Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986). Section 301 preempts a state cause of action if the resolution of the state cause of action is inextricably intertwined with the interpretation of the terms of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef*, Inc., 486 U.S. 399, 405-06 (1988); *see also Johnson v. Alcatel Ntework Sys, Inc.*, 963 F.Supp. 599, 604 (N.D. Tex. 1996). If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, an employee must exhaust the binding arbitration procedure before suing her employer under § 301. *Daigle v. Gulf State Util. Co.*, 794 F.2d 974, 977 (5th Cir. 1986) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). Even then, the employee is bound by the result of the arbitration

procedure unless she proves that the union breached its duty of fair representation. *Id.* (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976)).

Here, Plaintiff's wrongful termination claim is vague and supported only by an allegation that she was unjustly discharged. It appears from the numerous grievances Plaintiff has allegedly filed with her local Teamsters union and the arbitration proceedings she has allegedly attended that the resolution of the claim may require interpretation of the collective bargaining agreement. She has not contested UPS' assertions that her claim is based on state law, that the resolution of the claim is intertwined with the interpretation of the terms of the agreement, or that the claim is preempted by § 301. Given these circumstances, Plaintiff's state law wrongful termination claim, to the extent that one has been stated,[3] should be dismissed as preempted by § 301.

## XIV. DEFAMATION

Defendant moves to dismiss Plaintiff's defamation claim on grounds that she has failed to allege a false or defamatory statement and has not pled special damages.

Plaintiff pursues her defamation claim under Texas law, which defines defamation as "a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006). "To state a claim for defamation of a non-public figure under Texas law, a plaintiff must demonstrate that the defendant published a defamatory statement about him while acting with negligence regarding the truth of the statement." *Ameen v. Merck & Co.*, 226 F.App'x 363, 370 (5th Cir.2007). The

---

[3]Plaintiff does not allege that UPS breached a term of the collective bargaining agreement, or that the union breached its duty of fair representation. She alleges that the union's grievance process resolved each of her wrongful termination claims in her favor. The grievance process resulted in a withdrawal of her January 2008 notice of termination, and after she received a warning of termination in October 2010, resulted in a settlement agreement that held the grievance in abeyance until Plaintiff returned to "active employment in the craft."

complaint must identify the allegedly defamatory statement, the speaker of the statement, the person to whom the statement was communicated, and the time and place of the publication. *See Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998); *Redden v. Smith & Nephew, Inc.*, 2010 WL 2944598, at *6 (N.D. Tex. July 26, 2010). The more particular pleadings for a defamation claim allow the opposing party to raise the appropriate defenses. *See id.*

Plaintiff alleges that UPS defamed her when management personnel instructed hourly employees to stay away from her and divulged her private medical information concerning her diagnosis of bipolar disorder within the workplace. The alleged instructions, however, standing alone, were not defamatory because they merely expressed an opinion and did not constitute a false statement. *See Bell v. UPS*, 2000 WL 274274, at *3 (N.D. Tex. Mar. 10, 2000). The alleged remarks about her diagnosis were also not defamatory because they were not false; Plaintiff herself admits that a doctor diagnosed her with bipolar disorder, even if later doctors did not do the same. Assuming that the alleged instructions or remarks were false, Plaintiff has failed to plead who made the statement, when the statement was made, who the statement was communicated to, and the time and place of the communication. *See Redden*, 2010 WL 2944598, at * 5 (claim subject to dismissal on same grounds). In short, Plaintiff's allegations are not sufficient to state a claim for defamation under Texas law and should be dismissed pursuant to Rule 12(b)(6).

## XV.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

UPS urges dismissal of Plaintiff's state-law claim of intentional infliction of emotional distress on grounds that the claim duplicates her Title VII claims and is based on alleged conduct that is not extreme and outrageous.

Intentional infliction of emotional distress is "a 'gap-filler' tort, judicially created for the

limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). To establish this claim under Texas law, a plaintiff must show (1) intentional or reckless conduct by the defendant (2) that was extreme and outrageous and (3) caused the plaintiff severe emotional distress. *Id.* at 445. Conduct qualifies as extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). As a gap-filler tort, this claim may be preempted by Title VII or other statutory remedies. *See Watkins v. Tex. Dep't Crim. J.*, 269 F. App'x 457, 464-65 (5th Cir. 2008); *Ameen v. Merck & Co., Inc.*, 226 F. App'x 363, 372 (5th Cir. 2007); *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549-50 (N.D. Tex. 2005).

Since Plaintiff relies on the same alleged conduct as part of her discrimination, harassment, and retaliation claims, her claim of intentional infliction of emotional distress is preempted. Even if the claim is not preempted, *see Watkins*, 269 F. App'x at 465, Plaintiff has not alleged extreme and outrageous conduct by UPS. Most of Plaintiff's allegations involve "mere employment disputes" which is not the type of conduct that an intentional infliction of emotion distress claim recognizes. *See Gray v. Sage Telecomm., Inc.*, 2006 WL 2820075, at *15 (N.D. Tex. Oct. 2, 2006) (an intentional infliction of emotional distress claim is not recognized for mere employment disputes such as those involving supervising, reviewing, criticizing, demoting, transferring, disciplining and terminating employees). Her remaining allegations are that Brewer swerved at her on one occasion in the parking lot and rode his motorcycle with his high beams on in order to harass her; Ford denied

her lunch until 5:45 p.m. on one occasion; and UPS allowed her personal and private medical information to be divulged, discontinued or failed to deliver the items she had ordered, and created the "Funky Monkey" cap in order to mock minorities. This conduct neither goes beyond all possible bounds of decency nor rises to the level of atrocious behavior that is utterly intolerable in a civilized community. "Occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society." *GTE Sw., Inc., v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999). Since Plaintiff has not alleged the type of reprehensible conduct by UPS that supports a claim of intentional infliction of emotional distress, this claim should be dismissed as well.

## XVI. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

UPS seeks dismissal of Plaintiff's claim of negligent infliction of emotional distress on grounds that it is not recognized in Texas. Plaintiff responds that federal law recognizes her claim.

Texas law does not recognize a claim for negligent infliction of emotional distress. *See Hagen v. Hagen*, 282 S.W.3d 899, 910 (Tex. 2009) (noting that negligent infliction of emotional distress "is not a valid claim"); *Abraham v. Sw. Bell Yellow Pages, Inc.*, 3 F.3d 438, 1993 WL 347193, at *4 (5th Cir. 1993) (noting that Texas does "not recognize a cause of action for negligent infliction of emotional distress arising out of an employment context"). Additionally, there is no constitutional right to be free from negligent infliction of emotional distress. *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985); *accord Flores v. City of Palacios*, 381 F.3d 391, 401 n.8 (5th Cir. 2004) (recognizing that "the Constitution does not provide an *independent* right to be free from emotional distress"); *Shinn ex. rel. Shinn v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996) (recognizing that "there is no constitutional right to be free from emotional distress."). Since neither Texas nor federal law recognizes the claim, the claim should be dismissed

for failure to state a claim upon which relief can be granted.

## XVII.  OPPORTUNITY TO AMEND

Notwithstanding Plaintiff's failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to court order, *see Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr.12, 2004); *Sims*, 2001 WL 627600, at *2, or when a *pro se* plaintiff seeks to amend his complaint in response to a recommended dismissal, *see Swanson v. Aegis Commc'ns Group, Inc.*, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1.  Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Since Plaintiff filed her original complaint, she has amended her complaint once as a matter of course and once after being given an opportunity to amend when dismissal of her claims had been recommended.  Despite ample opportunity to amend her complaint, she has failed to allege facts sufficient to raise her right of relief above the speculative level.  Because she has pled her best case to the court, no further opportunity to amend is required.

## XVIII. CONCLUSION

*Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Third Amended Complaint*, should be **GRANTED**. Plaintiff's claims for gender-based discrimination and harassment under Title VII, and age-based discrimination under the ADEA should be dismissed without prejudice for failure to exhaust administrative remedies. The remaining claims for retaliation, racial harassment, and racial discrimination under Title VII and § 1981; racial discrimination under TCHRA; deprivation of dignity under § 242, § 1983, and the Fourteenth Amendment; violation of the Fourteenth Amendment; conspiracy under § 241; deprivation of rights under § 242; malicious deprivation of dignity and liberty under § 1983; conspiracy to deprive of rights under § 1985; gender discrimination under Title IX; wrongful termination under the common law and § 301; defamation; intentional infliction of emotional distress; and negligent infliction of emotional distress, should be dismissed with prejudice.

**SO RECOMMENDED on this 21st day of June, 2011.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE